(No. 37208.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CLEOPHUS DIXON, Plaintiff in Error.

*Opinion filed May 27, 1963.*

EARLE S. RAPPAPORT, JR., of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and EDWARD J. HLADIS and MATTHEW J. MORAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

The defendant, Cleophus Dixon, was tried by jury in the criminal court of Cook County and convicted of the crime of rape. He was given a sentence of 25 years in the penitentiary. We have issued a writ of error to review the conviction.

The defendant does not contend that the evidence was insufficient to establish his guilt and it will therefore not be necessary to set forth the evidence in detail. The prosecuting witness and her male companion, one Tucson Boyd, testified that they were accosted by the defendant who directed them to proceed down an alley, where he robbed both of them and forced the prosecuting witness to sub-

mit to an act of intercourse. It appears that the defendant had previously been tried on the same indictment and at that trial the jury was unable to agree and a mistrial was declared. The defendant contends that he was. deprived of the equal protection of the laws by reason of the fact that he was financially unable to purchase a transcript of the evidence at the first trial and the State failed to provide him with a free transcript. It is argued that the defendant needed the transcript to lay a proper foundation for impeachment and also to prepare for trial. The record of the second trial shows that on many occasions during defense counsel's cross-examination of the prosecuting witness and Boyd, he attempted to establish that their testimony at the second trial differed from their testimony at the first trial. However, counsel did not have a transcript' of the testimony at the first trial and the court sustained objections to all questions as to whether the witness in question had testified differently at the first trial, on the ground that the only proper method of laying a foundation for impeachment was to read the exact question and answer made at the former trial. It is true that this method is customary and proper, (see *People* v. *Williams,* 22 Ill.2d 498, 503) but it is not always necessary to repeat the question and answer from the former trial. (*Math* v. *Chicago City Railway Co.* 243 Ill. 114, 122; cf. *Reisch* v. *People,* 229 Ill. 574, 579.) The court therefore should have permitted defense counsel to lay a foundation for impeachment without requiring him to repeat the specific questions and answers from the former trial. After laying the foundation, the impeachment could have been completed, in the absence of a transcript, by calling the reporter at the former trial to prove the prior inconsistent testimony. The ruling of the trial court, which unduly restricted defense counsel's attempts to impeach the State's witnesses, requires that the judgment of conviction be reversed and the cause remanded for a new trial. This holding makes

it unnecessary to rule upon the constitutional claim advanced by the defendant, since constitutional questions will not be decided if the cause can be determined on other grounds. (*City of Detroit* v. *Gould*, 12 Ill.2d 297, 304.) We also note that after his conviction the defendant applied for and received a free transcript of the evidence at his first trial, which has been incorporated in the record on this writ of error. This transcript will be available for the defendant's use at a subsequent trial.

Since the cause must be remanded for a new trial we believe that it is appropriate to discuss certain other errors alleged by the defendant, since they involve matters which might occur on a subsequent trial. These alleged errors relate to rulings of the trial judge with respect to the testimony of certain witnesses. At the beginning of the defendant's case, counsel attempted to call a doctor as the first witness. Counsel for the State objected to hearing any testimony from the doctor. The objection was discussed by counsel and the court out of the presence of the jury. The State took the position that under no circumstances could any testimony by the doctor be competent since the State had introduced no medical testimony and did not contend that the prosecuting witness had been injured. Defense counsel claimed that the testimony of the doctor might be relevant to establish a lack of force. After further discussions the court said that he would hear the testimony of the doctor out of the presence of the jury and decide whether it was competent. The doctor testified that she had examined the prosecuting witness and that her examination disclosed that the hymen was distensible and irregular and that the vagina admitted two fingers with ease. On the basis of this testimony the court decided that the testimony would be damaging to the defendant rather than helpful and announced that he would not let the doctor testify. The proceedings after this statement by the court are confusing. Defense counsel asked

if he might just call the doctor, and the court replied, "No, if you are going to call her I am going to let her testify." The prosecutor objected and the court stated, "Over your objection I will permit her." Defense counsel then stated that he would have to call the doctor to protect the record and the court then replied, "No you don't because in my opinion it would strengthen the State's case. It would bring out the fact that there has been a distension of the hymen. There is no way of proving when or how. And it was irregular. Doctor, you may go home." Defense counsel then stated, "Judge, over the objection—," and the court replied, "The record is as clear as it can be. I have made the offer." We cannot agree with the statement of the court that the record is as clear as it might be, but we are satisfied that the procedure adopted by the trial judge was improper. It is not the proper function of a trial judge to determine whether certain evidence will be favorable to the defendant. This decision must be made by the defendant and his counsel, and the only function of the trial judge is to rule upon the admissibility of the evidence as it is presented before the jury. The procedure of the trial judge here was, in our opinion, of such a character as to deprive the defendant of his right to a fair trial.

The defendant also called as a witness a juvenile probation officer who had interviewed the prosecuting witness. Defense counsel asked if she could relate a conversation she had with the prosecuting witness and the witness said that she would do so to the best of her ability. She was asked whether she had anything with her that would refresh her recollection and she replied that she had the records from the Family Court. The prosecutor objected to further testimony by this witness and the court excused the jury while this objection was argued. The court stated that he wanted to examine the report, and defense counsel stated that before she used the report to refresh her recollection she should see whether she could recall

the conversation. The court then stated that the witness had testified that she could not recall the conversation. The jury was then recalled and the witness was asked about the conversation. She stated that it was impossible for her to say, "I said this and she said that." Counsel then asked the witness whether she had any notes with her that might refresh her recollection and the witness replied that she had. The court then stated that he wanted to see the notes. The witness replied that the notes which the court asked to examine were contained in a notebook that she used when she was interviewing a girl or a boy and that she usually tried to put down what they said. The witness said that she used her own symbols and the court said that he would try to decipher those symbols. Counsel then asked whether the prosecuting witness had ever told the witness whether she could identify her assailant. The prosecutor objected and the court sustained the objection and stated that from his examination of the notes no such statement appeared. The court asked the witness whether she had an independent recollection and the witness answered, "Well, I do * * *." The court then said, "Without looking at the file and without having referred to the file?" The witness then stated, "Yes, I am sorry. As I recall definitely, the child stated that the man came for her, I believe, from the behind. Now I am not going to swear to that." The prosecutor objected on the ground that the witness was under oath and that if she could not swear to the truth of her testimony she could not testify. Defense counsel asked further questions concerning what the prosecuting witness had said as to her ability to identify her assailant and the court stated for the record that he had read the notes of the witness and that the matters which counsel was inquiring into do not appear in the notes. He therefore sustained objections to the line of inquiry which was being pursued by defense counsel. We are of the opinion that this procedure by the trial court was improper. The wit-

ness at one point stated that she had some independent recollection of her conversation with the prosecuting witness but the court apparently ignored this testimony and stated that the witness had no independent recollection. If the recollection of the witness had been exhausted she should have been permitted to refer to her notes to refresh her recollection. It was not the function of the trial judge to "decipher" the notes and decide whether they might refresh the witness's recollection.

The other errors assigned are of such a nature that they will not likely occur on a subsequent trial and we find it unnecessary to discuss them.

We are of the opinion that the interests of justice require that the judgment of conviction be reversed and that a new trial be awarded. The judgment of the criminal court of Cook County is therefore reversed and the cause is remanded for a new trial.

*Reversed and remanded.*